Approved: /s/ Megan Gaffney
MEGAN GAFFNEY
Assistant United States Attorney

ORIGINAL

DOC #_____

U.S. DISTRICT COURT FILED DEC 0 8 2015 S.D. OF N.Y.

Before: THE HONORABLE RONALD L. ELLIS
United States Magistrate Judge
Southern District of New York

15 MAG 4387

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           : COMPLAINT

        - v. -                     : Violations of
                                     18 U.S.C. § 1030
KRISTOPHER ROCCHIO,                :
                                     COUNTY OF OFFENSE:
        Defendant.                 : NEW YORK

- - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

BRAD CARPENTER, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

COUNT ONE

1. From at least in or about August 2013 through in or about February 2015, in the Southern District of New York and elsewhere, KRISTOPHER ROCCHIO, the defendant, intentionally accessed a computer without authorization and exceeded authorized access, and obtained information from a protected computer, for purposes of commercial advantage and private financial gain, to wit, ROCCHIO repeatedly and without authorization accessed the email account of an employee of a financial services company for purposes of commercial advantage and private financial gain.

(Title 18, United States Code, Sections 1030(a)(2)(C), (c)(2)(B)(i).)

COUNT TWO

2. From at least in or about August 2013 through in or about February 2015, in the Southern District of New York and elsewhere, KRISTOPHER ROCCHIO, the defendant, intentionally

accessed a protected computer without authorization and thereby recklessly caused damage resulting in loss of $5,000 and more during one year, to wit, ROCCHIO repeatedly accessed the email account of an employee of a financial services company and deleted emails sent from that account and, in so doing, caused the financial services company to engage in remediation efforts that cost $5,000 and more in 2015.

(Title 18, United States Code, Sections 1030(a)(5)(B), (c)(4)(A)(i)(I).)

The bases for deponent's knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with the FBI, and I have been personally involved in the investigation of this matter. I have been a Special Agent with the FBI for approximately 12 years. For over one year, I have been assigned to a criminal computer intrusion squad in the FBI's New York Field Office. During that time, I have received training regarding computer fraud and computer hacking, and have participated in numerous investigations and prosecutions involving computer fraud and computer hacking.

4. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents and reports of the investigation, criminal history records, and other records, and from my conversations with other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. I have reviewed records from the Human Resources Department of a global fixed-income financial services company with an office in New York, New York (the "Company"), and from that review, I have learned, among other things, the following:

    a. KRISTOPHER ROCCHIO, the defendant, was employed by the Company from on or about February 19, 2008, through on or about March 20, 2012.

    b. ROCCHIO provided an address in Staten Island, New

York ("Address-1") as his home address.

      c.    In connection with the termination of his employment, on or about March 20, 2012, ROCCHIO signed a separation agreement with the Company (the "Separation Agreement"). In the Separation Agreement, ROCCHIO agreed to, among other things, the following provisions:

      i.    "[T]he proprietary information and materials that relate to the Company or its clients must be treated as confidential. These materials may only be copied, disclosed or used by you during the course of your employment by the Company, as necessary to carry out its business. You must return all such materials (including all copies) in your possession to the Company upon termination of employment."

      ii.    "By signing below, you certify that you have [] returned to the Company any and all confidential and/or proprietary information, information containing trade secrets, and all other materials, documents or property belonging to the Company, including without limitation: files, records, . . . reports, software and hardware, . . . computer data, passwords, . . ., and [] deleted all confidential and/or proprietary information, information containing trade secrets, and/or any other materials, documents or property belonging to the Company from your home and/or personal computer drives and from any other personal electronic, digital or magnetic storage devices[.]"

    6.    I have spoken with an individual employed by the Company (the "Supervisor"), and reviewed certain contents of the Supervisor's email account at the Company (the "Supervisor's Email"), and from that conversation and that review, I have learned, among other things, the following:

      a.    The Supervisor oversaw the work of KRISTOPHER ROCCHIO, the defendant, during ROCCHIO's employment at the Company.

      b.    The Supervisor never provided ROCCHIO with the Supervisor's Email password, nor did the Supervisor authorize ROCCHIO to read the Supervisor's Email.

      c.    On or about February 25, 2015, the Supervisor received an email bounce back message[1] to the Supervisor's Email.

---

[1] I know from my training and experience that an email bounce back message is sent when a mail server cannot send or deliver an email. The mail server generates an email bounce back

3

The message stated, in substance and in part, that an email sent from the Supervisor Work Account (the "Failed Email") could not be delivered. The Supervisor had not personally attempted to send the Failed Email from the Supervisor's Email to the email address identified in the email bounce back message.

d. Shortly thereafter, on or about February 25, 2015, the Supervisor looked at the sent mail folder in the Supervisor's Email and noticed two emails in the folder that the Supervisor had not personally sent. One email was the Failed Email. The other was an email (the "February 25 Email") sent to another email address (the "Email Account"). The content of both the Failed Email and the February 25 Email was the same, and contained an attachment. The attachment was a spreadsheet that detailed, among other things, the compensation and performance evaluations for numerous employees at the Company. The spreadsheet was password protected.

e. Later, on or about February 25, 2015, the Supervisor checked the sent mail folder in the Supervisor's Email again, but the Failed Email and the February 25 Email had been deleted by someone other than the Supervisor.

f. At or about that time, on or about February 25, 2015, the Supervisor notified the IT Department at the Company.

7. I have spoken with representatives of the IT Department at the Company, and from those conversations, I have learned, among other things, that, after the conduct described above, (1) representatives of the IT Department at the Company examined the Supervisor's Email and (2) they discovered that, approximately three minutes after the Failed Email was sent from the Supervisor's Email, the February 25 Email was sent from the Supervisor's Email to the Email Account.

8. I have reviewed records, including content, obtained from the provider of the Email Account,[2] and from that review, I have learned, among other things, the following:

a. The subscriber for the Email Account is "Kris

---

message that describes the failure and sends it to the originating account, i.e., the sender of the original email.

[2] I obtained the contents of the Email Account pursuant to a search warrant signed by the Honorable Ronald L. Ellis, United States Magistrate Judge for the Southern District of New York.

Rocchio" with an address in Staten Island, New York ("Address-2").

  b. On or about December 21, 2013, the Email Account received an email from the Supervisor's Email (the "December 21 Email"). The December 21 Email contained an attachment. The attachment was a Power Point presentation that contained internal metrics of the Company. Also on or about December 21, 2013, the Email Account forwarded the December 21 Email to an email account ("Email Account-2") at another financial services company with its headquarters in New York, New York ("Company-2").

  c. On or about February 25, 2015, the Email Account received the February 25 Email from the Supervisor's Email.

  d. Also on or about February 25, 2015, the Email Account forwarded the February 25 Email to another individual.

  9. Law enforcement has spoken with representatives from Company-2, and I have reviewed records provided by Company-2, and from those conversations and that review, I have learned, among other things, the following:

  a. KRISTOPHER ROCCHIO, the defendant, was employed by Company-2 from on or about May 1, 2013 through on or about July 24, 2015.

  b. Email Account-2 was ROCCHIO's email account at Company-2.

  c. On or about December 21, 2013, Email Account-2 received the December 21 Email (with the attachment).

  d. On or about December 24, 2013, Email Account-2 forwarded the December 21 Email to the email account of another employee at Company-2.

  10. I have reviewed records provided by the Company, in conjunction with records provided by internet service providers, and from that review, I have learned, among other things, the following:

  a. From in or about October 2013 through in or about January 2014, an IP address ("IP Address-1") remotely accessed the Supervisor's Email approximately 17 times from locations outside of the Company's offices. IP Address-1 was assigned to "Kristopher Rocchio" at Address-2.

b. From on or about August 21, 2013 through on or about July 23, 2014, a second IP address ("IP Address-2") remotely accessed the Supervisor's Email approximately 15 times. Company-2 was assigned IP Address-2.

c. From on or about January 31, 2014 through on or about February 13, 2015, a third IP address ("IP Address-3") remotely accessed the Supervisor's Email approximately 61 times. IP Address-3 was assigned to "Kristopher Rocchio" at Address-2.

d. On or about November 19, 2014, a fourth IP address ("IP Address-4") remotely accessed the Supervisor's Email approximately one time. IP Address-4 was assigned to a hotel in Chicago, Illinois (the "Chicago Hotel").

e. On or about February 18, 2015, a fifth IP address ("IP Address-5") remotely accessed the Supervisor's Email approximately one time. IP Address-5 was assigned to "Kristopher Rocchio" at Address-2.

11. I have reviewed records provided by the Chicago Hotel, as well as reviewed a travel record database accessible to law enforcement, and from that review, I have learned, among other things, the following:

a. KRISTOPHER ROCCHIO, the defendant, booked a roundtrip airplane ticket, leaving the New York City area on or about November 17, 2014, traveling to Chicago, Illinois, and then returning on or about November 21, 2014.

b. On or about November 17, 2014, "Kristopher Rocchio" checked in to the Chicago Hotel. "Rocchio" provided the name and address of Company-2 for his reservation. "Rocchio" provided the same birthdate as KRISTOPHER ROCCHIO, the defendant. "Rocchio" checked out on or about November 21, 2014.

12. I have spoken with representatives of the Company and from those conversations, I have learned, among other things, that, in response to events described in substance and in part in this Complaint, the Company conducted a number of remedial measures including hiring a computer forensics firm to conduct a review of its systems in 2015, the cost of which exceeded $5,000.

WHEREFORE, deponent respectfully requests that an arrest warrant be issued for KRISTOPHER ROCCHIO, the defendant, and that ROCCHIO be imprisoned or bailed, as the case may be.

BRAD CARPENTER
Special Agent
Federal Bureau of Investigation

Sworn to before me this
8th day of December, 2015

12-8-15

THE HONORABLE RONALD L. ELLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK